## UNITED STATES DISTRICT COURT
## MIDDLE DISRICT OF FLORIDA
## ORLANDO DIVISION

**JESSICA LUIGGI
AND JONAS TORRES,**
Plaintiff

v.

**HARLEM HEIGHTS
LEASING COMPANY**
Defendant

Case No.

## COMPLAINT

**COMES NOW** The Plaintiffs, **JESSICA LUIGUI AND JONAS TORRES** (hereinafter "Plaintiffs") by and through the undersigned counsel, hereby files this Compliant against Defendant, **HARLEM HEIGHTS LEASING COMPANY** (hereinafter "Defendant"), respectfully pray and state as follows:

## NATURE OF THE ACTION

1. On September 28, 2022, hurricane Ian passed through central Florida. On this date the Plaintiffs were residents of Lake Breeze RV, property owned and managed by HARLEM HEIGHTS LEASING COMPANY.

2. Upon landfall of the Hurricane the Plaintiffs began to experience flooding and property damage. Due to the Defendant's negligence in maintaining the property, before, during and after the Hurricane, the Plaintiffs began to experience property and personal harm.

3. The defendants also violated The Clean Water Act pursuant to 33 U.S.C. §1251, in regards to their actions following the Hurricane Response, which forced the Plaintiff's to be without clean water.

## JURISDICTION, VENUE AND PARTIES

4. This is an action at law within the jurisdiction of this Court as a matter 28 U.S.C. 1331, a case arising under the United States Constitution or federal laws or treaties.

5. This Court has supplemental jurisdiction over Plaintiff's Florida state law claims pursuant to 28 U.S.C. § 1338(b), because those state claims are joining with substantial and related claims under federal law. The Court also has subject-matter jurisdiction over those state claims pursuant to 28 U.S.C. § 1367, because Plaintiff's state law claims are interrelated with Plaintiff's federal claim and arise from a common nucleus of operative facts.

6. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred within this judicial district, Venue is also proper because Defendant, HARLEM HEIGHTS LEASING COMPANY is a Florida leasing company organized pursuant to the laws of Florida with its principal place of business located in Florida.

7. Plaintiffs are residents of Lake Breeze RV Park located at 2040 Lee Rd. Orlando, Florida 32810 since June 23, 2017; where a substantial part of the events or omissions giving rise to the claim occurred.

## FACTUAL ALLEGATIONS

5. Plaintiffs have been residents of Lake Breeze RV Park located at 2040 Lee Rd. Orlando, Florida 32810 since June 23, 2017.

6. On or about September 28, 2022, hurricane Ian made landfall in central Florida. After two days seeking shelter in a hotel, our clients returned to the Lake Breeze RV property to find the lake had flooded into the RVs causing the unkept septic tanks to overflow.

7. Additionally, water lines were destroyed, and the area remained spoiled.

8. Living in the RV became highly impractical and inhumane. Human feces surrounded our clients' living space which caused foul orders and water and air contamination.

9. For the next weeks and even months our clients have made numerous efforts to improve their housing conditions by speaking to on-site staff and sending letters to management.

10. At all times our clients were met with negative, rude, and disrespectful comments.

11. On or about September 15, 2023, a letter demanding payment was mailed to the defendants to settle the case without litigation.

12. On or about October 17, 2023, we received an acknowledgement email from Northfield Insurance (a general liability insurance carrier, Harlem Heights Leasing Company).

13. On or about October 23, 2023, the Plaintiff's mobile home caught on fire due to the lack of maintenance and proper care of the electrical system, by HARLEM HEIGHTS LEASING COMPANY.

14. On or about October 31, 2023, we received an email from Northfield Insurance, advising the Defendant's did not have coverage for the claims and damages set forth herein.

## COUNT ONE
### 33 U.S.C. §1251 CLEAN WATER ACT

15. Plaintiffs re-allege and incorporates by reference paragraphs 1-14 into this claim.

16. At the direction of management at Lake Breeze RV Park, on or about October 4, 2022, employees took the personal hose of our clients to "drain the septic tank."

17. The employees, without authorization, used the Plaintiff's hose to connect it to a small pump and began to remove the water and excrement from the clogged septic tank into a land close to the lake where the Plaintiff's RV was stationed.

18. However, the lake continued to overflow, and the discharged material once again began to flood the area surrounding the Plaintiff's RV.

19. Additionally, the employees began to dig holes in the grass in an attempt to conceal the contaminated water and excrement below the ground.

20. All of the Company's "remedial" actions showed a blatant disregard for the environment, wildlife, and their tenant's safety.

21. The contaminated water and feces surrounding the RV area forced the Plaintiff's to seek temporary housing, and upon their return, they were could not use nor drink the water supply in their RV.

## COUNT TWO
## NEGLIGENCE PREMISES LIABILITY

22. Plaintiffs re-allege and incorporates by reference paragraphs 1-14 into this claim.

23. Plaintiffs were forced to seek shelter at numerous hotels for an unreasonable amount of time due to the gross negligence of the Leasing Company.

24. The septic tank that began to overflow next to the Plaintiff's RV had not been well-kept. There was a crack in the septic tank that had been ignored by the Defendants.

25. Once the flooding had occurred the company did not rapidly maintain the area to ensure the safety and welfare of the tenants.

26. Plaintiff's spent days defecating in plastic bags and unable to have running clean water due to the septic tank overflow contaminating the water.

27. The amount of human feces around their home was unbearable, creating awful smells.

28. At various time Plaintiffs were told by maintenance and management that it was not their responsibility to take care of the clogged septic tank.

29. Additionally, Plaintiffs were told that they were free to take their RV and leave, and since the rent is so cheap, they should not expect anything more from the Company.

30. On or about December 3, 2022, after approximately two months of living in inhumane conditions, and an unsanitary environment Mrs. Luiggi and Mr. Torress were allowed to move to a new lot, lot #26.

31. The move came months after the company was informed of all the sanitary issues and were given ample time to address all of the tenants' valid concerns.

32. Additionally, the electric system was so outdated and unkept, on October 23, 2023, the Plaintiff's electrical system caught on fire and caused property damage.

33. Defendant breached their duty to maintain the premises clear of any hazardous conditions.

## COUNT THREE
## FRAUD

34. Plaintiffs re-allege and incorporates by reference paragraphs 1-14 into this claim.

35. On or about December 3, 2022, Plaintiff's moved from lot #8 to lot #26 in Lake Breeze RV Park located (2040 Lee Rd. Orlando, Florida 32810).

36. Upon information and belief, the company policy is to create their own utility bills and bill the tenants through their leasing office, rather than turning over the original utility bill to the tenant.

37. On December 5, 2022, Plaintiff's received two utility bills: one for lot #8 and one for #26.

38. However, the period of the bill ran from 10/20/2022-11/17/2022.

39. It would be fraud to charge the tenants a utility bill for a lot in which they did not reside.

40. Plaintiffs wrote a letter to management asking for an explanation, a letter which was completely disregarded.

41. On January 3, 2023, the tenants again received two utility bills, one for lot #8 and another for lot #26 for the period of 11/18/2022-12/19/2022.

42. To avoid arguments with management and potential claims to collection, the tenants paid both bills.

43. On February 3, 2023, the tenants received two utility bills, for the period of 12/20/2022-01/19/2022.

44. However, this time both statements reflected lot #26, but with two different amounts.

45. It has become apparent that the utility bills have been manually manipulated, and when confronted with questions, the Company has refrained from giving an explanation.

46. The tenants reserve the right to have their money reimbursed for all fraudulent transactions in the hands of the company and management.

47. Defendant's mishandling of tenant funds by the leasing office is a deeply concerning breach of trust.

48. The financial well-being and security of tenants depend on the responsible management of their funds, and any negligence in this regard erodes the foundation of a harmonious landlord-tenant relationship.

## COUNT FOUR
## INTENTIONAL INFLICTION
## OF EMOTIONAL DISTRESS

49. Plaintiffs re-allege and incorporates by reference paragraphs 1-14 into this claim.

50. Throughout the tenant's process in trying to attain humane living conditions, the employees and management have been rude, condescending, and have gone to the extent of mocking Plaintiff's basic needs.

51. Defendant had disregarded all cries for help and have acted in a reckless manner.

52. On the day the septic tanks were going to be drained, all of the tanks were cleared except the one which was causing damage to my clients' home.

53. Shortly after, those in charge of maintenance on the property delivered a bouquet of flowers and a bottle of Lysol to the Plaintiff's home in an effort to ridicule my client for the foul around their home.

54. Additionally, the Plaintiff's dog became ill when it began to walk around the contaminated water.

55. Plaintiff's had to take their pet to the veterinarian where it was discovered the pet had a rash and allergies.

56. Rather than providing assistance, management and their employees have exacerbated the situation for the tenants.

57. So much so that Plaintiff's have presented symptoms of insomnia and aggravated anxiety.

58. Additionally, the Plaintiffs have had to take time off their employment, loss of enjoyment of life and their property, incurred medical cost (dog), and other consequences all stemming from the outrageous conduct of management.

## **DAMAGES INCURRED**

59. Under Count two the Plaintiffs claim the septic tank spillage caused extensive damage to Plaintiff's mobile home and personal belongings, requiring costly repairs and replacements. Additionally, the septic tank overflow rendered Plaintiffs' mobile home uninhabitable, forcing them to seek alternative temporary housing accommodation and incurring additional expenses of cleaning expenses and outside living expenses. Damages claimed are for no less than $50,000.

60. Under count three, Fraud, the Plaintiffs reserve the right to claim punitive damages for not less than $25,000.

61. Under count four of the complaint, the Plaintiffs claim due to the extreme and outrageous conduct of the employees of Lake Breeze RV, the Plaintiff's suffered damages for emotional distress, of no less than $400,000.

62. Plaintiffs also incurred Out-of-pocket Expenses related to temporary housing, transportation, and other necessities due to the unlivable conditions on the leased property, and medical expenses for her dog totaling an amount no less than $25,000.

63. Additionally, the Plaintiffs suffered non-monetary losses such as pain and suffering, emotional distress, loss of enjoyment of life, and loss of consortium.

64. Plaintiffs request Attorney fees and Court costs.

## RESERVATION TO ALLEGE PUNITIVE DAMAGES

63. Plaintiff's reserve their right to seek leave of Court, as is required in this jurisdiction, to amend this pleading to add any appropriate claim for punitive damages.

## DEMAND FOR JURY TRIAL

64. Pursuant to Federal Rules of Civil Procedure 38(b), Plaintiff's demands a trial by jury of all issues so triable in this action.

## PRAYER FOR RELIEF

65. My clients demand just and fair compensation for the damage they have incurred as a result of Defendants actions in the aforementioned causes of actions. This includes reimbursement for property repairs, replacement costs, medical expenses, out-of-pocket expenses, emotional distress, and any other costs related to his temporary housing and displacement, and Attorney's fees and Court cost, and other remedies this Honorable Court deems justice.

66. At this stage the Plaintiff requests no less than **$500,000.00** in damages.

**I HEREBY CERTIFY** that on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification to all parties in the case on this 1st day of March 2024.

/s/EDWIN PRADO GALARZA
**Prado Law Offices**
111 N. Orange Ave. Suite 800
Orlando, FL 32801

Telephone: (407) 420 - 7926
Email: pradolaw10@gmail.com
Florida Bar No. 1008115